# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
Submitted On Briefs April 22, 2009 Session

## IN THE MATTER OF: Q.D.B, A.R.P., A.T.P. and A.A.W.

**Direct Appeal from the Juvenile Court for Shelby County**
**No. R7685      Herbert J. Lane, Judge**

---

**No. W2008-01933-COA-R3-PT - Filed May 15, 2009**

---

Mother appeals the trial court's judgment terminating her parental rights based on persistence of conditions.  We affirm.

**Tenn. R. App. P. 3 appeal as of Right; Judgment of the Juvenile Court Affirmed; and Remanded**

DAVID R. FARMER, J., delivered the opinion of the court, in which ALAN E. HIGHERS, P.J., W.S., and J. STEVEN STAFFORD, J., joined.

W. Ray Glasgow, Memphis, Tennessee, for the appellant, Kelly Wilson.

Robert E. Cooper, Jr., Attorney General and Reporter, Michael E. Moore, Solicitor General, and Jill Z. Grim, Assistant Attorney General, for the Appellee, State of Tennessee, Department of Children's Services.

### MEMORANDUM OPINION[1]
In September 2005, the Tennessee Department of Children Services ("DCS") took Q.B., born August 2000; A.R.P., born April 2003; A.T.P, born March 2004; and A.W., born April 2005, into custody following an investigation into charges of environmental neglect and drug use on the part of the children's mother, Respondent/Appellant Kelly Wilson ("Mother").  A single mother, Mother was pregnant with her fifth child when the children were taken into custody.  She and the children were homeless and seeking shelter, food, and assistance following an assault on Mother by the father of two of the children.  On September 20, 2005, the Juvenile Court for Shelby County awarded DCS temporary custody based on homelessness and findings of medical,

---

[1]Rule 10 of the Rules of the Court of Appeals of Tennessee provides:

   This Court, with the concurrence of all judges participating in the case, may affirm, reverse or modify the actions of the trial court by memorandum opinion when a formal opinion would have no precedential value. When a case is decided by memorandum opinion it shall be designated "MEMORANDUM OPINION", shall not be published, and shall not be cited or relied on for any reason in any unrelated case.

nutritional, and environmental neglect of the children, who were assessed as hungry and dirty, ill and failing to thrive, and at least one child appeared to have been burned with an iron and cigarette. Additionally, in its custody order, the trial court found Mother had no identification, that the DCS case worker described Mother as jumpy and unable to sit still during her interview with DCS, and that Mother had been seen purchasing cocaine. Mother could not identify any family members who would be able to assist her with the children. The children were placed in a foster home, where they have remained and which is now considered to be a pre-adoptive home by both Mother and DCS.[2]

In October 2005, the first of three sets of permanency plans was developed following a child and family team meeting. The plans required Mother to complete a mental health and drug assessment; participate in an alcohol and drug program as needed; to attend and complete parenting classes; and to obtain and maintain stable suitable housing. The plans required DCS to assist Mother to find affordable housing; to assist Mother with transportation for supervised visitation with the children; and to assist Mother with other parenting and homemaker services. The plan recited dual goals of return to parent/exit custody to live with relatives.

The children were adjudicated dependent and neglected in January 2006. In February 2006, the juvenile court appointed legal counsel to represent Mother, and a guardian ad litem to represent the children. In May 2006, DCS modified the permanency goal to reunification with parent because the relatives identified by DCS were not "viable placements." Following a hearing, in June 2006 the juvenile court found Mother was working toward the permanency goals; that she was in compliance with the permanency plans; that Mother had completed a parenting class and was in an inpatient drug treatment program with Baby Love, a program offered by Midtown Mental Health; and that DCS was making reasonable efforts. On January 18, 2007, Mother filed a petition to modify custody. The juvenile court denied Mother's petition following a hearing in April 2007.

A ratification hearing was held in June 2007. The juvenile court found that, although Mother had completed some of the requirements of the permanency plan, she was not in compliance with the plan and had tested positive for cocaine in September 2006, one month after giving birth to her fifth child and while she was a resident in the Baby Love program. The trial court found that an evaluation conducted by the LeBonheur Center for Children and Parents in April 2007 recommended that the children not be returned to Mother. The court found that DCS was making reasonable efforts and that it had provided Mother with parenting classes and drug and alcohol counseling. The court found Mother's responses at the hearing to be unresponsive and "non-credible," and ordered the permanency plan goal changed to exit custody to live with relative/adoption.

On June 11, 2007, DCS filed a petition to terminate the parental rights of Mother and the children's putative fathers. In its petition, DCS alleged failure to substantially comply with the permanency plans and persistence of conditions as grounds to terminate Mother's parental rights. DCS also alleged termination was in the children's best interests. The matter was tried on April 28

---

[2]According to Mother's brief to this Court, her fifth child was taken into DCS custody in October 2007 and DCS has filed a petition to terminate Mother's rights to the child. The youngest child resides with his siblings in the pre-adoptive foster home.

and 30, 2008. On June 30, 2008, the trial court entered an order terminating the parental rights of Mother and the children's fathers.[3] In its order, the trial court found by clear and convincing evidence that the children had been removed from Mother's custody for a period exceeding six months, that the conditions leading to removal persisted, and that there was little likelihood that the conditions would be remedied at an early date such that the children could be safely returned to Mother's care. The trial court further found that DCS had made reasonable efforts to assist Mother in completing the tasks identified in the permanency plan, and that termination of Mother's parental rights was in the children's best interest. The trial court found that clear and convincing evidence did not support termination based on failure to substantially comply with the permanency plan. Mother filed a timely notice of appeal to this Court.

### *Issues Presented*

Mother presents the following issue for our review:

> Whether the Tennessee Department of Children's Services demonstrated by clear and convincing evidence that reasonable efforts have been made to make it possible for the child[ren] to return home.

### *Standard of Review*

We review the decisions of a trial court sitting without a jury *de novo* upon the record, with a presumption of correctness as to the trial court's findings of fact, unless the evidence preponderates otherwise. *In Re: Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002). Tenn. R. App. P. 13(d). No presumption of correctness attaches, however, to a trial court's conclusions on issues of law. *Bowden v. Ward*, 27 S.W.3d 913, 916 (Tenn. 2000); Tenn. R. App. P. 13(d).

Tennessee Code Annotated section 36-1-113 governs the termination of parental rights. The Code provides, in pertinent part:

> (c) Termination of parental or guardianship rights must be based upon:
> (1) A finding by the court by clear and convincing evidence that the grounds for termination of parental or guardianship rights have been established; and
> (2) That termination of the parent's or guardian's rights is in the best interests of the child.

Tenn. Code Ann. § 36-1-113(c)(2005).

Thus, every termination case requires the court to determine whether the parent whose rights are at issue has chosen a course of action, or inaction, as the case may be, that constitutes one of the

---

[3]One of the men named by DCS in its petition to terminate parental rights was determined not to be the father of any of Mother's children following DNA testing, and was dismissed. The others have not appealed termination of their parental rights.

statutory grounds for termination. *In Re: Adoption of a male child, W.D.M.*, No. M2002-02963-COA-R3-CV, 2003 WL 22794524, at *3 (Tenn. Ct. App. Nov. 25, 2003)( no perm. app. filed ); *see generally* Tenn. Code Ann. § 36-1-113(g)(1)-(9)(2005). The State may not deprive a parent of their fundamental right to the custody and control of their child unless clear and convincing evidence supports a finding that a statutory ground for termination exists and that termination is in the best interests of the child. Tenn. Code Ann. § 36-1-113(c)(2005). Although the "clear and convincing evidence" standard is more exacting than the "preponderance of the evidence" standard, it does not require the certainty demanded by the "beyond a reasonable doubt" standard. *In Re: M.L.D.*, 182 S.W.3d 890, 894 (Tenn. Ct. App. 2005). Clear and convincing evidence is evidence that eliminates any substantial doubt and that produces in the fact-finder's mind a firm conviction as to the truth. *Id.* Insofar as the trial court's determinations are based on its assessment of witness credibility, this Court will not reevaluate that assessment absent evidence of clear and convincing evidence to the contrary. *Id.* With this standard of review in mind, we turn to whether the trial court erred by terminating Mother's parental rights in this case.

### *Analysis*

The Tennessee Code provides, in relevant part, that grounds for the termination of parental rights may be established upon a showing by clear and convincing evidence that:

> (3)(A) The child has been removed from the home of the parent or guardian by order of a court for a period of six (6) months and:
> (i) The conditions that led to the child's removal or other conditions that in all reasonable probability would cause the child to be subjected to further abuse or neglect and that, therefore, prevent the child's safe return to the care of the parent(s) or guardian(s), still persist;
> (ii) There is little likelihood that these conditions will be remedied at an early date so that the child can be safely returned to the parent(s) or guardian(s) in the near future; and
> (iii) The continuation of the parent or guardian and child relationship greatly diminishes the child's chances of early integration into a safe, stable and permanent home[.]

Tenn. Code Ann. § 36-1-113(g)(3)(2005).

In making its determination of grounds, the court must conclude that DCS has made reasonable efforts to return the children to the parent's care and custody, or that, under the circumstances, such efforts would have been futile. *E.g., In Re: Q.E., D.E. and N.H.*, No. W2008-00634-COA-R3-PT, 2008 WL 5397540, at *9 (Tenn. Ct. App. Dec. 30, 2008), *perm app. denied* (Tenn. Mar. 16, 2009)(citations omitted). DCS is obligated to make reasonable efforts both before and after a child is removed from the parent's home. *Id.* First, DCS "has a duty to use reasonable efforts to avoid removal." *Id.* (citing see Tenn. Code Ann. § 37-1-166(a)(1), (g)(2)(A) (2005)). Second, after removal, DCS "must use reasonable efforts to reunify the parent with the

child." *Id.* (citing see T.C.A. § 37-1-166(a)(2), (g)(2)(B) (2005)). Reasonable efforts is "the exercise of reasonable care and diligence by the department to provide services related to meeting the needs of the child and the family." Tenn. Code. Ann. § 37-1-166(g)(1)(2005).

> Reasonable efforts entail more than simply providing parents with a list of service providers and sending them on their way. The Department's employees must use their superior insight and training to assist parents with the problems the Department has identified in the permanency plan, whether the parents ask for assistance or not.

*In re C.M.M.*, No. M2003-01122-COA-R3-PT, 2004 WL 438326, at *7 (Tenn. Ct. App. Mar. 9, 2004)(citations omitted). The Department is not required to make "Herculean" efforts, however, and "the remedial responsibility does not rest solely on the Department's shoulders." Parents also are required to "make reasonable efforts to rehabilitate themselves and to remedy the conditions that required them to be separated from their children." *Id.* The burden is on DCS to prove by clear and convincing evidence that its efforts at reunification were reasonable under all of the circumstances. *Id.* at *8.

Whether DCS has made reasonable efforts to reunify the family must be decided on a case-by-case basis. The court must consider:

> (1) the reasons for separating the parent from his or her child or children, (2) the parent's physical and mental abilities, (3) the resources available to the parent, (4) the parent's efforts to remedy the conditions that required the separation, (5) the resources available to the Department, (6) the duration of the parent's remedial efforts, and (7) the closeness of the fit between the conditions that led to the initial separation, the requirements in the permanency plan, and the Department's efforts.

*Id*. "Efforts directed toward matters of little consequence are not reasonable." *Id.* (citing *See In re Valentine*, 79 S.W.3d at 548-49 (a permanency plan must be reasonable and must be related to remedying the conditions that led to the removal in the first place)).

On appeal, Mother does not assert that the conditions leading to the children's removal from her care do not still persist. Rather, Mother's argument, as we understand it, is that the permanency plan was not calculated to meet her needs, which arise from a limited mental capacity which counselors evaluating Mother described as "primitive and child-like low functioning." She asserts that, although she completed the drug counseling and other programs recommended by DCS, they simply were unsuccessful. She concludes that because the programs and services provided by DCS were not successful, the permanency plan accordingly must not have been reasonably calculated to meet her needs. Mother asserts that her inability to discontinue her use of illegal drugs and to maintain a clean, safe home must necessarily result from the failure of the permanency plan despite the protracted services provided by DCS.

The trial court found that, despite DCS efforts to assist Mother with drug treatment programs over the course of three years, Mother continued to test positive for cocaine and marijuana. The trial court found that Mother had refused case management and individual therapy, and that Mother failed to recognize that she has a drug problem. Additionally, the trial court found that Mother was "unresponsive" when asked if she could pass a drug test on the day this matter was tried and, on advice of counsel, refused to take a drug test at that time. Mother also was unresponsive when asked if she had taken illegal drugs during the past few months. The trial court further found that DCS had offered Mother homemaker services, but that Mother had refused those services. The trial court also found that when Mother's fifth child was removed from her care, the conditions at Mother's home were "deplorable."

As Mother acknowledges, DCS is required to make reasonable efforts to assist a parent to comply with the tasks identified in the parenting plan and to make it possible for children to be returned to their parents care. Upon review of the record, we cannot say the evidence preponderates against the trial court's findings that, despite drug treatment and other services, Mother simply has been unable or unwilling to discontinue her use of illegal drugs and to establish a safe, clean home for her children. We must disagree with Mother's conclusion that DCS is at fault for Mother's inability to end her drug abuse and provide a suitable home for her children. DCS has made more than reasonable efforts in this case. No permanency plan can be devised to guarantee a parent's successful completion. In this case, Mother is simply unwilling or unable to make the efforts needed to provide a safe home for her children. Additionally, we agree with the trial court that the evidence in this case clearly and convincingly demonstrates that termination of Mother's parental rights is in the children's best interest.

### *Holding*

In light of the foregoing, the judgment of the trial court is affirmed. Costs of this appeal are taxed to the Appellant, Kelly Wilson.

_____
DAVID R. FARMER, JUDGE
