IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs June 8, 2012

## IN RE ASHLEY E., ROBERT E., JR., AND EVAN E.[1]

**Appeal from the Circuit Court for Montgomery County**
**No. MCCCCVSG101195     Ross H. Hicks, Judge**

---

**No. M2011-02473-COA-R3-PT - Filed July 24, 2012**

---

Parents appeal the termination of their parental rights to three children, contending that the court erred in finding that the Department of Children's Services complied with the notice requirements of Tenn. Code. Ann. § 37-2-403. We affirm the judgment terminating parental rights.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

RICHARD H. DINKINS, J., delivered the opinion of the court, in which FRANK G. CLEMENT, JR., and ANDY D. BENNETT, JJ., joined.

Kimberly Falls Lentz, Memphis, Tennessee, for the Appellant, Georgia E.

James R. Potter, Clarksville, Tennessee, for the Appellant, Robert E., Sr.

Robert E. Cooper, Jr., Attorney General and Reporter, and Lindsey O. Appiah, Assistant Attorney General, for the Appellee, Tennessee Department of Children's Services.

## OPINION

### I. Factual and Procedural History[2]

The children who are the subject of this proceeding, Ashley E., Robert E., Jr., and Evan E., were adjudicated to be dependent and neglected and placed into the custody of the Department of Children's Services ("DCS") by Agreed Order entered in the Montgomery

---

[1] This Court has a policy of protecting the identity of children in parental termination cases by initializing the last names of the parties.

[2] The factual history is derived from the allegations of the Petition to Terminate Parental Rights, the answers of Appellants to the petition, and exhibits in the record.

County Juvenile Court on April 28, 2009, having been placed in emergency protective custody on December 19, 2008.[3] The parties entered into an initial permanency plan on January 12, 2009[4] which was ratified at a hearing on April 28, which Appellants attended with their counsel.

DCS initiated this proceeding on June 8, 2010, seeking to terminate the parental rights of Georgia E. ("Mother") and Robert E., Sr., ("Father"). DCS alleged that their parental rights should be terminated on the following grounds: (1) abandonment by failure to support, Tenn. Code Ann. §§ 36-1-113(g)(1) and 36-1-102(1)(A)(i), -102(1)(C) and -102(1)(E); (2) abandonment by failure to provide a suitable home, Tenn. Code Ann. §§ 36-1-113(g)(1) and 36-1-102(1)(A)(ii); (3) substantial noncompliance with the permanency plan, Tenn. Code Ann. §§ 36-1-113(g)(2) and 37-2-403(a)(2); (4) persistent conditions, Tenn. Code Ann. §§ 36-1-113(g)(3); and severe child abuse, Tenn. Code Ann. §§ 36-1-113(g)(3) and 37-1-102(b)(21). On December 28, 2011 the court entered its order terminating parental rights on the grounds of failure to support, failure to provide a suitable home, substantial non-compliance with the permanency plan, and persistence of conditions; the court did not find severe child abuse.

---

[3] The specific reasons which led to the children being placed in DCS custody were stated on the permanency plan as follows:

**What specific event led to state custody? What risks or behaviors of the child or caretaker, or conditions contributed to state custody?**

The court order states: "Due to the sexual abuse allegations, the previous involvement with the Department, the continual disregard for the agreed Immediate Protection Plan; allowing the minor children to be around convicted sex offender; and no alternate placement resources, state custody was determined to be in the children's best interest and well-being."

**What efforts has the Department put forth to prevent this episode of state custody?**

DCS provided FSS services in the home to assist the family with environmental concerns. DCS has provided services to the family to include having a mobile home donated to them when they were homeless.

**What other conditions exist that prevent the child from leaving state custody?**

DCS has worked with the E[] family for the past two years and has been unable to remedy the environmental issues or convince the parents to keep the children away from their uncle who is a sex offender. At the time of removal there was no stove or sink in the kitchen and the bathroom sink was very brown inside, and the home had an unpleasant odor.

[4] The plan reflects that Appellants were present at the meeting to discuss the plan but did not sign it.

Mother and Father appeal.

## II. Standard of Review

A parent has a fundamental right to the care, custody, and control of his or her child. *Stanley v. Illinois*, 405 U.S. 645, 651 (1972); *Nash-Putnam v. McCloud*, 921 S.W.2d 170, 174 (Tenn. 1996). Thus, the state may interfere with parental rights only if there is a compelling state interest. *Nash-Putnam*, 921 S.W.2d at 174–75 (citing *Santosky v. Kramer*, 455 U.S. 745 (1982)). The existence of at least one of the statutory grounds for termination and that termination is in the child's best interest, must be proven in order for parental rights to be terminated. *In re D.L.B.*, 118 S.W.3d 360, 367 (Tenn. 2003); *In re Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002); Tenn. Code Ann. § 36-1-113(c).

Because of the fundamental nature of the parent's rights and the grave consequences of the termination of those rights, trial courts must require a higher standard of proof in deciding termination cases. *Santosky*, 455 U.S. at 769; *Matter of M.W.A., Jr.*, 980 S.W.2d 620, 622 (Tenn. Ct. App. 1998). Thus, both the grounds for termination and the best interest inquiry must be established by clear and convincing evidence. Tenn. Code Ann. § 36-3-113(c)(1); *In re Valentine*, 79 S.W.3d at 546. Clear and convincing evidence "establishes that the truth of the facts asserted is highly probable . . . and eliminates any serious or substantial doubt about correctness of the conclusions drawn from the evidence." *In re M.J.B.*, 140 S.W.3d 643, 653 (Tenn. Ct. App. 2004). Such evidence "produces in a fact-finder's mind a firm belief or conviction regarding the truth of the facts sought to be established." *Id.* at 653.

In light of the heightened standard of proof in these cases, this court adapts the customary standard of review set forth by Tenn. R. App. P. 13(d). *Id.* at 654. As to the court's findings of fact, our review is *de novo* with a presumption of correctness unless the evidence preponderates otherwise. *Id.* We must then determine whether the facts, as found by the trial court or as supported by the preponderance of the evidence, clearly and convincingly establish the elements necessary to terminate parental rights. *Id.*

## III. Discussion

The sole issue presented by Mother and Father is: "Whether clear and convincing evidence supports the trial court's finding that the Department of Children's Services complied with the notice requirements of Tenn. Code Ann. § 37-2-403." They note that only the third page of a three page document purporting to establish the statutory notice is in the record and contend that the evidence does not show that DCS gave them proper notice; as a consequence, they argue, "the State was not authorized to proceed on abandonment." This contention is without merit.

Tenn. Code Ann. § 37-2-403(a) provides in pertinent part:

(2)(A) The permanency plan for any child in foster care shall include a statement of responsibilities between the parents, the agency and the caseworker of such agency. Such statements shall include the responsibilities of each party in specific terms and shall be reasonably related to the achievement of the goal specified in subdivision (a)(1). The statement shall include the definitions of "abandonment" and "abandonment of an infant" contained in § 36-1-102 and the criteria and procedures for termination of parental rights. Each party shall sign the statement and be given a copy of it. The court must review the proposed plan, make any necessary modifications and ratify or approve the plan within sixty (60) days of the foster care placement. The department of children's services shall, by rules promulgated pursuant to the Uniform Administrative Procedures Act, compiled in title 4, chapter 5, part 2, determine the required elements or contents of the permanency plan.

(B)(i) The parents or legal guardians of the child shall receive notice to appear at the court review of the permanency plan and the court shall explain on the record the law relating to abandonment contained in § 36-1-102, and shall explain that the consequences of failure to visit or support the child will be termination of the parents' or guardians' rights to the child, and the court will further explain that the parents or guardians may seek an attorney to represent the parents or guardians in any termination proceeding. If the parents or legal guardians are not at the hearing to review the permanency plan, the court shall explain to the parents or guardians at any subsequent hearing regarding the child held thereafter, that the consequences of failure to visit or support the child will be termination of the parents' or guardians' rights to the child and that they may seek an attorney to represent the parents or guardians in a termination proceeding.

The record shows that Mother and Father were present at the meeting on January 12, 2009 where the permanency plan was developed.[5] Although Mother and Father signed the sheet of participants at the meeting, the plan recites that both wished to consult with an attorney before signing the plan. On the signature page of the three page document, immediately under the statement "I have received a copy of <u>Criteria & Procedures for Termination of Parental Rights</u> and have been given an explanation of its contents" is the notation "Both parents refused to sign 1/12/09 - 2:20 p.m." Cindy Fox, case manager for

---

[5] Other participants at the meeting were DCS case manager Cindy Fox, "facilitator" Tammy McKeilher, Roxann Mills, identified as "her niece", and Laura Gaines, not otherwise identified.

DCS also signed the document immediately under the lines stating "I explained the contents of this document to the mother/father on: 1-12-09."

The fact that the first two pages of the document is not in the record is not dispositive of the issue of notice raised by Mother and Father. The notice referred to in Tenn. Code Ann. § 37-2-403(a)(2)(B)(i) is to appear at the hearing when the permanency plan or modifications to an existing plan is presented for approval. Mother and Father have not challenged the approval of the initial or modified permanency plans and there is no transcript in this record of the either the April 27, 2009 hearing at which the initial permanency plan was approved or the August 27, 2009 hearing when it was revised.[6] On the record before us, there is no indication that the statute was not complied with at the April 28 and August 27, 2009 hearings; in this regard, we note that neither Mother nor Father articulated any objection or reservation to proceeding with the hearing on termination of their parental rights based on lack of compliance with Tenn. Code Ann. § 37-2-403. Further, in its order terminating their parental rights, the court found that Mother and Father were "provided with the criteria and procedures for termination of parental rights at least as of the middle of January 2009, when they both acknowledged under oath that they received it in the mail"; this is the notice referenced at Tenn. Code Ann. § 37-2-403(a)(2)(A). Mother and Father have not challenged this finding.

Although Appellants have not challenged the grounds upon which their rights were terminated or the holding that termination was in the best interest of the children, we have reviewed the record and conclude that the evidence clearly supports the termination of their parental rights.

## IV. Conclusion

For the foregoing reasons, the judgment of the Montgomery County Circuit Court is AFFIRMED.

_____
RICHARD H. DINKINS, JUDGE

---

[6]  The record also reflects that Mother and Father were present at a meeting to revise the initial permanency plan held on July 30, 2009; the revised plan was approved by the court on August 27.