IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs December 13, 2005

# IN RE ADOPTION OF J.A.K. & K.R.K.

**Appeal from the Chancery Court for Lincoln County**
**No. A-186     James B. Cox, Chancellor**

---

**No. M2005-02206-COA-R3-PT - Filed January 26, 2006**

---

This is the second appeal in this proceeding to terminate a biological mother's parental rights. On the first appeal, this court affirmed the trial court's conclusion that the mother had abandoned the children but remanded the case to the trial court to make specific findings regarding whether the termination of the mother's parental rights was in the children's best interests. The trial court determined that terminating the mother's rights would be in her children's best interests, and the mother appealed. We have determined that the record contains clear and convincing evidence supporting the trial court's conclusion.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court**
**Affirmed**

PATRICIA J. COTTRELL, J., delivered the opinion of the court, in which WILLIAM C. KOCH, JR., P.J., M.S., joined. WILLIAM B. CAIN, J., filed a concurring opinion.

Susan E. McCown, Fayetteville, Tennessee, for the appellant, J.E.K.

N. Andy Myrick, Jr., Fayetteville, Tennessee, for the appellees, C.J.K and J.E.K.

## OPINION

This is the second appeal in this termination of parental rights case. This court's earlier opinion sets out in thorough detail the facts and history of the children and their parents. *See In re Adoption of Kleshinski*, No. M2004-00986-COA-R3-CV, 2005 WL 1046796 (Tenn. Ct. App. May 4, 2005). Essentially, J.E.K. ("Father") and J.E.K. ("Mother") had two sons during their marriage. They were divorced in 1996, and custody of the older son, then five and a half years old, was awarded to Father, while custody of the younger son, then only one and a half years old, was awarded to Mother. Less than a year later, Mother signed a consent order giving Father custody of the younger son and giving Mother reasonable visitation with both children "to be established by Father in his discretion." Mother was not ordered to pay child support.

A month before Mother signed the consent order, Father remarried. He and his new wife ("Stepmother") continued to reside in Lincoln County, Tennessee, and the two boys lived with them. Mother moved to Alabama at some point, but continued regular visitation with the boys until a dispute arose over visitation on New Year's Eve in 1998. She has not had visitation with them since that time. Mother remarried, and she and her new husband continued to live in Alabama.

Father and Stepmother filed a petition to terminate Mother's parental rights and to allow Stepmother to adopt the two children in February of 2003. After the trial court terminated her parental rights, Mother appealed. In its opinion dated May 4, 2005, this court affirmed the trial court's finding that grounds existed for termination. Specifically, after exhaustively reviewing the testimony and the trial court's findings, this court held that the combined weight of the facts constituted clear and convincing evidence that Mother had willfully failed to visit the children. Consequently, the ground of abandonment as defined in Tenn. Code Ann. § 36-1-102(1)(A) was found to have been proved by the requisite heightened standard of proof.

As to the second requirement for termination of parental rights, however, this court held that the trial court had failed to make an explicit finding that termination of Mother's parental rights was in the children's best interests. *See* Tenn. Code Ann. § 36-1-113(c). Further, the trial court also failed to make specific findings of fact as to best interests. Accordingly, this court vacated the judgment terminating Mother's parental rights and remanded the case for written findings of fact and conclusions of law on the best interest issue as required by Tenn. Code Ann. § 36-1-113(k). The trial court was given discretion to determine whether further proof on the remanded issue was necessary.

## I. PROCEEDINGS ON REMAND

On remand, the trial court did not take additional proof, but instead analyzed the proof already presented. The trial court entered a memorandum opinion finding that termination of Mother's parental rights was in the children's best interests. In pertinent part, that opinion provides:

> From the foregoing facts the Court concludes that, by clear and convincing proof, it is in the children's best interests that the parental rights of the mother be terminated. The Court has considered all the statutory factors in reaching its conclusion. Specifically, the Court is clearly convinced by the proof that the mother, having not seen the children in over four (4) years, has made no meaningful adjustment of circumstance that would render it in the children's best interest to resume a relationship with her or to be in her home.

> Clearly, the mother has failed in all respects to effect a lasting adjustment to her situation and the record is void of any attempts on her part to involve social services in the equation. A lasting adjustment into her home does not reasonably appear possible after such a lapse of time and after uncontroverted proof that the youngest child does not even know the mother. There has been no contact between

the mother and these children in over four (4) years and no meaningful relationships exist, nor should exist, after the passage of so much time.

The mother has clearly not paid support and was under no obligation to do so, but she also has made no monetary contribution to the lives and the best interests of these children.

A final order was subsequently entered, incorporating the memorandum opinion, terminating Mother's parental rights. The final order specifically states that the court considered each statutory factor in conducting the best interest analysis. Mother appealed.

## II. APPLICABLE STANDARDS

The only issue before this court is whether there was clear and convincing evidence that termination of Mother's rights was in the best interests of the children. The existence of a statutory ground, abandonment, was previously found by the trial court, and this court affirmed that finding. However, the party seeking termination of a parent's rights must prove by clear and convincing evidence both a statutory ground and that termination is in the child's best interest. Tenn. Code Ann. § 36-1-113(c)(1); *In re Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002).

The requirement of grounds primarily involves the rights of the parent and the question of whether that parent has acted in such a way as to forfeit those rights. In contrast, the question of best interest primarily involves the rights of the child. The question of the parent's rights is relevant during this phase of the court's inquiry only to the extent that it impacts the child's best interest. When the interests of the child and the parents diverge, the best interests of the child must prevail. *In re H.A.L.*, No. M2005-00045-COA-R3-PT, 2005 WL 954866, at *9 (Tenn. Ct. App. April 25, 2005)(No Tenn. R. App. P. 11 application filed); *In re M.E.W. and J.W.W.*, No. M2003-01739-COA-R3-PT, 2004 WL 865840, at *9 (Tenn. Ct. App. April 21, 2004).

The best interests of the child do not become the paramount consideration until the trial court has determined that the parent is unfit based on clear and convincing evidence of one or more of the grounds for termination listed in Tenn. Code Ann. § 36-1-113(g). Once a parent has been found to be unfit, the interests of the parent and child diverge. While the parent's interests do not evaporate upon a finding of unfitness, the focus of the proceedings shifts to the best interests of the child.

*In Re Audrey S. & Victoria L.*, No. M2004-02758-COA-R3-PT, 2005 WL 2051286 at *26 (Tenn. Ct. App. Aug. 25, 2005). The legislature has clearly stated the rule in this regard:

In all cases, when the best interests of the child and those of the adults are in conflict, such conflict shall always be resolved to favor the rights and the best interests of the child, which interests are hereby recognized as constitutionally protected and, to that end, this part shall be liberally construed.

Tenn. Code Ann. § 36-1-101(d).

The legislature has given the courts guidance as to the factors they should consider when determining a child's best interest. Tennessee Code Annotated § 36-1-113(i) reads:

In determining whether termination of parental or guardianship rights is in the best interest of the child pursuant to this part, the court shall consider, but is not limited to, the following:

(1) Whether the parent or guardian has made such an adjustment of circumstance, conduct, or conditions as to make it safe and in the child's best interest to be in the home of the parent or guardian;

(2) Whether the parent or guardian has failed to effect a lasting adjustment after reasonable efforts by available social services agencies for such duration of time that lasting adjustment does not reasonably appear possible;

(3) Whether the parent or guardian has maintained regular visitation or other contact with the child;

(4) Whether a meaningful relationship has otherwise been established between the parent or guardian and the child;

(5) The effect a change of caretakers and physical environment is likely to have on the child's emotional, psychological and medical condition;

(6) Whether the parent or guardian, or other person residing with the parent or guardian, has shown brutality, physical, sexual, emotional or psychological abuse, or neglect toward the child, or another child or adult in the family or household;

(7) Whether the physical environment of the parent's or guardian's home is healthy and safe, whether there is criminal activity in the home, or whether there is such use of alcohol or controlled substances as may render the parent or guardian consistently unable to care for the child in a safe and stable manner;

(8) Whether the parent's or guardian's mental and/or emotional status would be detrimental to the child or prevent the parent or guardian from effectively providing safe and stable care and supervision for the child; or

(9) Whether the parent or guardian has paid child support consistent with the child support guidelines promulgated by the department pursuant to § 36-5-101.

The trial court herein twice stated it had considered these statutory factors.

Many of these factors are clearly meant to be applied in situations where a child has been removed from a parent's home (usually initiated by the Department of Children's Services) and reunification of the family has not been possible. Because long term foster care is disfavored under the public policy established by the legislature and is seldom in a child's best interest, many of the statutory best interest factors relate to the likelihood that the child will be able to leave foster care and return to the parent's home in the near future. If that likelihood is remote, the best interest of the child often lies in termination of parental rights so that the child can attain the security and stability of a permanent home through adoption. Adoption cannot occur until the parent's rights are terminated.

The case before us does not fit that factual scenario. The children are not in foster care. They have been living for the past nine years with Father and Stepmother and appear to have been part of a stable family unit. The question of whether the children could safely reside with Mother is of little relevance since Father has had custody under court orders since shortly after the divorce and any change of custody could only occur if those orders were modified under applicable legal standards.

Having made this distinction, we will apply the most relevant factors and/or attempt to apply factors in a way that is reasonable in the factual situation before us. In reviewing the judgment, herein, this court must apply the appropriate standards, which have been explained thusly:

> Evidence satisfying the clear and convincing evidence standard establishes that the truth of the facts asserted is highly probable, and eliminates any serious or substantial doubt about the correctness of the conclusions drawn from the evidence. It produces in a fact-finder's mind a firm belief or conviction regarding the truth of the facts sought to be established.
>
> * * *
>
> The heightened burden of proof required by Tenn. Code Ann. § 36-1-113(c)(1) requires us to adapt Tenn. R. App. P. 13(d)'s customary standard of review for cases of this sort. First, we must review the trial court's specific findings of fact *de novo* in accordance with Tenn. R. App. P. 13(d). Thus, each of the trial court's specific factual findings will be presumed to be correct unless the evidence preponderates otherwise. Second, we must determine whether the facts, either as found by the trial court or as supported by the preponderance of the evidence, clearly and convincingly establish the elements required to terminate a biological parent's parental rights.

*In re M.O.*, 173 S.W.3d 13, 18-19 (Tenn. Ct. App. 2005); *see also In re Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002).

### III. ANALYSIS

In addition to the more general findings or conclusions set out earlier, the trial court also made the following findings of fact:

(1) Defendant did not see the children for four and one half (41/2) years preceding the filing of the petition;

(2) There has been absolutely no contact for two (2) years, even by telephone;

(3) Defendant knew or should have known the custody order she signed was not temporary;

(4) Defendant knew of the residence of the Petitioner's for the entire time she has not visited and has had absolutely no contact;

(5) Defendant admits no payment of support or medical bills of any kind during this period;

(6) The Court finds that no overt threats were made to the Defendant and her excuses as to why she did nothing to gain time with her children are not credible;

(7) Residential sharing occurred without threat or violence against the Defendant until the "New Year's eve blow up" ended all residential sharing by the Defendant;

(8) The Defendant knew where the Plaintiff's lived and made no overt attempt to enforce visitation in person;

(9) According to the father, the youngest child does not even know the Defendant.

On appeal, Mother argues that her failure to visit or contact the children was not willful but, instead, caused by her fear of physical harm. The trial court made a contrary finding in its best interest analysis. Further, the question of whether her failure to visit was willful was decided in the earlier stage of this proceeding in the context of grounds when the trial court held, and this court affirmed the holding, that Mother's failure to visit for years had been willful. We cannot revisit that determination.

-6-

Mother would like the opportunity to re-establish a relationship with her children and to resume visitation, preferably under specific court orders. While we do not doubt the sincerity and depth of Mother's wishes, that cannot be a determining factor in the best interest analysis. Instead, we must look at the children's interests in view of their current situation.

Mother's primary argument is that the evidence that termination is in the children's best interests does not rise to the clear and convincing level. Since no new evidence was taken after remand, Mother relies on statements made by the trial court and this court in the earlier proceedings.[1] The statements of the trial court that are quoted in Mother's brief were made at the close of the hearing as part of the court's oral ruling. Both the language of the statements and their context show they refer to the separate question of whether to grant Stepmother's petition to adopt the boys. The court decided it would not immediately rule on that petition and would not waive usual prerequisites such as a home study. The court was concerned about Father's admitted prior acts of physical violence against Mother during their marriage and Stepmother's making extremely derogatory remarks about Mother.

Based on our review of the record, we find that each of the specific factual findings made by the trial court is fully supported by the evidence. These children had not seen their mother since late 1998, a period of more than four years at the time of the hearing and seven years now. The boys were ages twelve and eight at the time of the hearing.[2] At that time, there had been no contact at all, even by telephone, for two years.

The trial court found that no meaningful relationship existed between the boys and Mother. We agree it would be unlikely one could exist in these circumstances. As the trial court noted, there was testimony the younger child did not even know Mother. Again, this is a not unexpected result of loss of contact.

The question before us is not whether Mother should be given another chance to establish and maintain a relationship with her sons. Instead, it is what effect termination of Mother's parental rights would have on the boys. Because of the nature of the question, there is simply little evidence as to how the boys would benefit from having Mother resume contact with them. It is generally assumed, and is in fact the public policy of the state in the context of custody arrangements, that a meaningful relationship with both parents is important and beneficial to a child. Such an assumption must disappear, however, when a parent has abandoned her children. In any event, it was not Mother's burden to prove that allowing her to visit or contact the children was in their best interests.

---

[1]In its opinion, the majority of the panel hearing the earlier appeal stated there was "little evidence" in the record that termination was in the best interest of the two boys. 2005 WL 1046796, at *28. The concurrence disagreed with any comment on the evidence or lack thereof in view of the remand for findings. In any event, we must review the trial court's findings now that they have been made and do not consider the dicta in the earlier opinion to have any bearing on that review.

[2]They are now fifteen and eleven.

To the contrary, the burden was on Stepmother[3] to prove, by clear and convincing evidence, that termination of Mother's parental rights was in the best interests of the children. Besides the evidence regarding the lack of contact and lack of a meaningful relationship with Mother, the only evidence regarding the effect of re-introducing Mother into the boys' lives was testimony from both Father and Stepmother that it would be detrimental to the boys to allow Mother to come back into their lives after such a long absence.[4] There was no expert testimony about the psychological or emotional impact such a change would have. While such evidence would have been helpful, we do not imply that parties seeking termination of a parent's rights must always present such evidence. There is nothing in this record to indicate these children have needed any kind of mental health assistance that would have produced an expert with actual knowledge of the boys. It is not difficult to perceive that re-introduction of Mother into the boys' otherwise settled lives would cause some disruption. Whether or not she could establish a relationship with them that would add to their lives is questionable in view of their ages and the time that has passed. If she were not successful or, more significantly, were she to fail to follow through with visits after initially visiting regularly, the consequences to the boys would be harmful, perhaps devastating.[5]

Based on all the above and our thorough review of the record, we find there was clear and convincing evidence that termination of Mother's parental rights is in the best interests of these two children. We do not do so lightly, but with a clear understanding of the gravity of the consequences.

The judgment of the trial court terminating Mother's parental rights is affirmed. The costs on appeal are taxed to the appellant, Mother, J.E.K.

_____

PATRICIA J. COTTRELL, JUDGE

---

[3]In its earlier opinion, this court held that Father did not have standing to seek termination of Mother's parental rights since the statute setting forth eligible parties did not include parents, relying on *Osborn v. Marr*, 127 S.W.3d 737, 740 (Tenn. 2004). Accordingly, the court dismissed the petition as to Father. The appeal proceeded on Stepmother's petition.

[4]Stepmother explained, "[i]t would be like taking them to Walmart and picking out a random woman and saying this is your mother."

[5]Stepmother testified about times in the past when Mother did not visit after arrangements had been made and how she would have to comfort the boys on those occasions because they were upset.