IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
January 17, 2013 Session

# IN RE THOMAS L. H. H.[1]

**Appeal from the Circuit Court for Davidson County**
**No. 07A64      Philip E. Smith, Judge**

---

**No. M2012-01746-COA-R3-PT - Filed February 28, 2013**

---

The trial court terminated Father's parental rights to his child, who was born addicted to drugs and with extensive medical needs, on the ground of persistence of conditions; Father, who was incarcerated when the child was born, appeals, contending that the termination of his rights is not supported by clear and convincing evidence. We have determined that the evidence shows that the Father's lack of participation in the care of the child and the treatment of the child's medical needs constitutes neglect; that the neglect persists and is reasonably probable to continue; that it will not be remedied; and that continuation of the relationship would put the child at further risk, thereby diminishing the child's complete integration into a safe and stable home. Consequently, we affirm the termination of Father's parental rights.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed.**

RICHARD H. DINKINS, J., delivered the opinion of the court, in which PATRICIA J. COTTRELL, P. J., M. S., and ANDY D. BENNETT, J., joined.

Joel Stephen Mills, Nashville, Tennessee, for the appellant, Christopher L. H. H.

Gregory D. Smith and Rebecca K. McKelvey, Nashville, Tennessee, for the appellees, Krissa L. S. B. and Marc T. B.

Stephanie P. Edwards, Nashville, Tennessee, as Guardian ad Litem for, Thomas L. H. H.

---

[1]  This Court has a policy of protecting the identity of children in parental termination cases by initializing the last names of the parties.

## OPINION

This is the second appeal in this termination of parental rights proceeding. In the first appeal, *In re Landon H.*, No. M2011-00737-COA-R3-PT, 2012 WL 113659 (Tenn. Ct. App. January 11, 2012) we vacated the trial court's March 4, 2011 order terminating Chris H.'s ("Father") parental rights on the ground of abandonment and remanded the case for consideration of whether Father's parental rights should be terminated on the ground of persistence of conditions; the mandate issued on March 15, 2012.[2]

On March 30, 2012, Appellees, who received custody of Landon pursuant to court order entered in a proceeding to have him declared dependent and neglected, moved the court to make findings of fact and conclusions of law regarding whether Father's parental rights should be terminated "on the ground of persistence of conditions, failure to support or any other ground in the Petition or the Supplemental Petition [to terminate parental rights], as instructed by the Court of Appeals." At a hearing on the motion on April 13, the parties agreed that the motion was appropriate and that no further proof would be offered. On June 28, the court issued a Supplemental Memorandum and Order finding by clear and convincing evidence that "persistence of conditions do exist pursuant to T.C.A. § 36-1-113(g)(3) as a grounds for termination" and that termination was in Landon's best interest.

In the June 28, 2012 Order, the court adopted the factual findings it had made in the March 4, 2011 Order, which was the subject of the first appeal, and made the following additional findings:

> [Father] admitted that out of the hundreds of speech therapy appointments that Landon has had he has attended only one. [Father] further admitted that he has never attended a doctor's visit, a visit with any medical or healthcare provider, a hearing test, or any other treatment for Landon in the past 4 ½ years. In addition, except for one speech therapy visit, [Father] has never spoken with, communicated with, e-mailed, or had any sort of written or oral communication with any individual who has provided Landon with medical treatment.
>
> ***

---

[2] It is not clear why the opinion in the first appeal was styled *In re Landon H.* The records in the Juvenile Court and Circuit Court proceedings are styled *In re Thomas Landon* [full name]. To maintain consistency, in this opinion we shall adopt the style used in the courts below.

[Father] admitted that he recognized Landon needs help with speech, but that he has nonetheless canceled speech therapy appointments set during the time of his visits with Landon and had otherwise failed to participate in Landon's speech therapy, except to take him to one visit.

\*\*\*

The Court further finds by clear and convincing evidence that [Father] has shown a complete indifference to the medical treatment that Landon has required. Additionally, [Father] has evidenced a complete indifference to the speech therapy needs of Landon.

These findings, as well as other findings contained in the previous Memorandum and Order, establish the conditions that led to Landon's removal, as well as establish other conditions that in all reasonable likelihood would cause Landon to be subject to further abuse or neglect, which prevent Landon's safe return to the care of [Father].

Additionally, the Court finds by clear and convincing evidence that [Father] has done virtually nothing to educate himself as to Landon's health problems or how to address Landon's special needs. [Father] has simply not participated in Landon's necessary medical care. [Father] paid none of the medical expenses of Landon. He failed miserably to participate in Landon's speech therapy or to assist [Appellees] in the cost of therapy. The Court further finds by clear and convincing evidence that [Father] has not participated in any meaningful way in Landon's educational endeavors, nor has he assisted in any meaningful financial contributions towards those endeavors.

\*\*\*

[Father] has had a substantial amount of time during the pendency of this proceeding to remedy his lack of involvement in the medical, speech, and educational care of Landon. [Father] was given notice of all medical care visits, speech therapy appointments and educational activities for Landon. However, through what the Court views as a lack of desire or interest, he has failed to actively participate.

Therefore, the Court finds by clear and convincing evidence that there is little likelihood that [Father] will ever show a sufficient interest in the medical,

speech or educational care of Landon so that Landon will be safely returned to him.

Father appeals, contending that there was not clear and convincing evidence of persistence of conditions.

DISCUSSION

Tenn Code Ann. § 36-1-113(g)(3) requires the following elements to terminate parental rights based on persistence of conditions:

The child has been removed from the home of the parent or guardian by order of a court for a period of six (6) months and:
(A) The conditions that led to the child's removal or other conditions that in all reasonable probability would cause the child to be subjected to further abuse or neglect and that, therefore, prevent the child's safe return to the care of the parent(s) or guardian(s), still persist;
(B) There is little likelihood that these conditions will be remedied at an early date so that the child can be safely returned to the parent(s) or guardian(s) in the near future; and
(C) The continuation of the parent or guardian and child relationship greatly diminishes the child's chances of early integration into a safe, stable and permanent home;

At the time of Landon's birth on April 5, 2006, Mother was addicted to narcotics and, because of her addiction, a conservator had been appointed for her; Father was incarcerated in federal prison.[3]  Appellees were contacted by Mother's conservator a few days after Landon's birth and were asked if they would be willing assume the role of Landon's legal guardians since neither Mother nor Father was able to care for him.  Appellees consented and on April 14 the Davidson County Juvenile Court granted Appellees emergency custody of Landon; they took him to their home when he was released from the hospital.  On November 6, 2006, the Juvenile Court entered an order finding Landon to be dependent and neglected and granted custody and guardianship to Appellees.  The record is clear that Mother's drug addiction and lack of prenatal care, as well as Father's incarceration, led to the removal of Landon from Mother's care and placement with Appellees; that is sufficient to satisfy the

---

[3] Father was released from prison in March 2007.

-4-

requirement of Tenn. Code Ann. § 36-1-113(g)(3) that the child be removed from the home of a parent or guardian by order of a court for a period of six (6) months.[4]

Dr. Kim Rosdeutscher, Landon's pediatrician, testified that Landon was born with a host of problems resulting from Mother's addiction and lack of prenatal care: he tested positive for hepatitis C, suffered a bleed in his brain, anemia associated with his premature birth, and a heart murmur. After testifying as to the treatment Landon received during his three week hospitalization following his birth, Dr. Rosdeutscher gave the following testimony relative to his condition at the time of trial:

Q. What is the child's current medical assessment?
A. He is healthy, for the most part. He does have some stigmata of having those premature lungs. He also had RSV when he was only five, six months old, and he probably was more susceptible to having the respiratory syncytial virus infection because he was a premie. He was receiving Synagis, so thankfully his illness was not as severe as it could have been in some form of 32-week premies. Synagis is an IV medication that is used to help treat and prevent RSV infections in premature babies. So his infection [] have been worse, but he does have issues with respiratory issues. Every time he is, you know, exposed to different situations, every little cold that goes through, he tends to be sick longer than a non-former premie, even to this day.
But overall, he is developing. He is progressing. He is, you know, growing. He is thriving in his current world. You know, he still does have some of the stigmata. He has speech delay. He has developmental delay in that his fine motor skills, his gross motor skills are not exactly where a child would be had they not had some of the issues he had. But overall, he's progressed very well, and I've been very proud of the way he's done, in all honesty.

Appellees testified relative to Landon's medical needs and special care requirements. An exhibit was introduced listing the weekly medical and therapy appointments that Appellees attended with Landon from May 2006 through the end of 2010. Landon had been treated by a total of eighteen doctors or therapists since birth, including a nutritionist, a dermatologist, multiple speech therapists, an eye specialist, liver specialist, and multiple

_____

[4] Father contends that the requirement in Tenn. Code Ann. § 36-1-113(g)(3) that the child be removed by order of the court has not been met, arguing that the November 6, 2006 Order awarding Appellees custody of Landon was not a final order because it did not comply with Tenn. R. Civ. P. 58. Father raised this issue in the first appeal, and we held that the argument was waived; we reiterate that holding in this opinion.

other pediatric specialists. Appellees testified that diagnosis of "developmental coordination delay disorder[,]" required that Landon receive an "extra layer of care," that he attend ongoing speech therapy and "occupational therapy," and be continually monitored by a pediatrician.

Dr. Janie Berryman, a licensed psychologist qualified by the court as an expert in child and family therapy, testified that she met with Landon on three occasions in October and November of 2010 in order to perform an assessment of his needs; in addition to her meetings, Dr. Berryman reviewed Landon's birth records, speech and language therapy records, and Dr. Rosdeutscher's deposition. Dr. Berryman rendered the following opinion relative to Landon's condition:

> I think Landon's got a double whammy. He was pre-exposed to drugs prenatally as well as born premature [by] two months. Both of those carry an impact on future development. . . . [H]e was born addicted and had to be weaned off the meds and had two seizures in the process early on. On top of that I think they're looking at the possible - developmental delays. He's got a clear obvious speech difficulty.
>
> ***
>
> [L]ooking at the developmental delays as far as his learning, I think that's going to be more evident when he hits school age or even coming to pre-K. The attention-deficit, ADHD-type of things, that's kind of classic for both prematurity, as well as prenatally drug-exposed kids. For premature kids, they have a higher rate of depression and anxiety later on, into their older years. And of course the hearing and speech problems with prenatal exposure, I think that's going to be added in. There's a lot of parallels between the two. Instead of having been born with language problems, he's got both.

Appellees testified that Father called on two occasions while he was incarcerated wanting to know "if his son was going to be normal"; he did not inquire as to the specific care Landon's condition required or the efforts Appellees were putting forth. Appellees testified that, following his release from prison, they notified Father either personally or through the Exchange Club[5] of each of Landon's doctor visits and therapy appointments, and that he only attended one therapy appointment in 2008. Dr. Rosdeutscher testified that in the 4½ years she had treated Landon, she had no contact with Father. Dr. Berryman testified that

_____
[5] The record reflects that the Juvenile Court entered an order on March 30, 2007 granting Father weekly visitation with Landon, to be supervised by the Exchange Club.

she contacted Father's attorney offering to have Father participate in her assessment but she was not contacted by Father or his attorney to participate.

Father testified that he was aware that Landon tested positive for morphine and opiates when he was born, and that he knew Landon was being treated by numerous healthcare providers, but that he had attended only one of hundreds of medical appointments for Landon and that he had seldom spoken to Landon's healthcare providers. Father also testified that he had canceled therapy appointments set for Landon. Father testified that he had not financially contributed to Landon's care or his education.

Because of the fundamental nature of the parent's rights and the grave consequences of the termination of those rights, courts require a higher standard of proof in deciding termination cases. *Santosky v. Kramer*, 455 U.S. 745, 766-69 (1982); *In re M.W.A., Jr.*, 980 S.W.2d 620, 622 (Tenn. Ct. App. 1998). Thus, both the grounds for termination and the best interest inquiry must be established by clear and convincing evidence. Tenn. Code Ann. § 36-3-113(c); *In re Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002).[6] In light of the higher standard of proof, we adapt the standard of review set forth by Tenn. R. App. P. 13(d). *In re M.J.B.*, 140 S.W.3d 643, 654 (Tenn. Ct. App. 2004). As to the court's findings of fact, our review is *de novo* with a presumption of correctness unless the evidence preponderates otherwise, in accordance with Tenn. R. App. P. 13(d). *Id.* We must then determine whether the facts, as found by the trial court or as supported by the preponderance of the evidence, clearly and convincingly establish the elements necessary to terminate parental rights. *Id.*

The court found that Father was indifferent to Landon's medical treatment and speech therapy requirements and had not participated in Landon's care in any meaningful way, that Father had "failed miserably" at participating in Landon's care, including assisting Appellees in paying for the therapy, and that he made no attempt to increase his participation and effort over time. The evidence, a portion of which is recounted above, does not preponderate against these findings; indeed, Father's testimony was consistent with the court's findings.

---

[6] This court articulated the clear and convincing evidence standard as follows:

Evidence satisfying the clear and convincing evidence standard establishes that the truth of the facts asserted is highly probable, and eliminates any serious or substantial doubt about the correctness of the conclusions drawn from the evidence. It produces in a fact-finder's mind a firm belief or conviction regarding the truth of the facts sought to be established.

*In re Adoption of J.A.K.*, No. M2005-02206-COA-R3-PT, 2006 WL 211807, at *3 (Tenn. Ct. App. Jan. 26, 2006) (citations omitted).

Dr. Berryman testified that, due to the circumstances of his birth, Landon has "special needs, and whether those needs are going to be met in the future [give] him a better opportunity for success"; that Landon would need a care giver who would see that his particular needs were met; and that he would need "aggressive and vigilant" treatment and therapy to address his medical problems. Dr. Berryman opined that she considered it neglect for a care giver not to attend to the medical needs of a child in his condition, and that if a parent has not been involved, as Father had not, it is "not a good sign for the future."

Dr. Rosdeutscher echoed Dr. Berryman's testimony regarding the need for aggressiveness in meeting Landon's needs and the importance of getting him to his medical appointments; she expressed the following concerns relative to his future care:

> Q.  The therapies he needs now and the speech therapy that you mentioned, does he need those things because of his condition at birth?
> A.  Yes. And we know that the babies who are born prematurely are more like to need long-term therapy.
> Q.  Are there any other long-term effects based on his condition at birth that you anticipate for this child?
> A.  My biggest concern for him is going to be his long-term pulmonary situation and how he's going - - is he going to develop some respiratory issues; that is going to be a biggie. And then just his overall development, how well he's going to be able to assimilate to classrooms, being in school, is there going to be issues with learning as things progress. We do know that the babies can be delayed and, you know, have issues with learning, have issues with attention, have those kind of things as we go along. So that's going to need to be closely observed as he gets into school and intervened on as we need to.

The evidence is clear that Landon's medical and therapeutic needs will be ongoing; it is against those needs that we weigh Father's lack of attention and diligence to Landon's condition and participation in his care.

Father's lack of attention to Landon's needs and participation in his care over the entirety of Landon's life shows neglect, as testified to by Dr. Berryman. While Father does not challenge the finding of the court that he "failed miserably" in participating in Landon's care, he argues that "[e]very factor cited by the Trial Court as signs of persistence of conditions are ones that can be addressed at an early date." In support of his argument he cites to the lack of evidence that he is currently using drugs and the fact that he is in compliance with his probation; he further contends that he can "start attending those [treatment and therapy] sessions." We have considered the testimony of what will be

required to address Landon's needs, as well as Father's testimony, giving appropriate deference to the trial court's finding that he was not credible.[7] The evidence clearly and convincingly shows that it is reasonably probable that the neglect Father has demonstrated in the past will persist within the meaning of Tenn Code Ann. § 36-1-113(g)(3)(A).

Likewise, the evidence shows that there is little likelihood that Father's neglect will be remedied as required by Tenn Code Ann. § 36-1-113(g)(3)(B). The testimony of Dr. Rosdeutscher that, over the years she has treated Landon, Father has never come to an appointment or inquired of her as to Landon's condition, is compelling, as is Father's own testimony that he has not attended Landon's doctor's appointments, therapy sessions, or school events or otherwise been involved in Landon's life, despite the willingness of Appellees to notify him of such appointments and events. As noted by Dr. Berryman, Father's neglect is "not a good sign for the future."

Father contends that the trial court's denial of his counter-petition for custody, which was affirmed as part of the first appeal in this case, means that the requirement at Tenn Code Ann. § 36-1-113(g)(3)(C) is not applicable in this case. Inasmuch as the statute must be read and applied in its entirety, we do not necessarily agree with Father and will proceed to address whether the evidence supports a holding that continuing Father's relationship with Landon diminishes Landon's integration into Appellees' home. Dr. Rosdeutscher testified as to her concerns regarding Landon's physical and developmental needs as he matures and that Landon's needs were being met by Appellees.[8] Dr. Berryman testified that Landon had

---

[7] The trial court noted in the June 28, 2012 order:

> This Court has had the opportunity, not only to listen to the testimony of [Father], but also to observe his body language and demeanor during his testimony. The Court specifically finds that [Father's] testimony was often disjointed, regularly inconsistent and to a large extent unbelievable. The Court finds that [Father] is not credible and his testimony is given no weight.

To the extent our review of Father's testimony allows us to make a credibility determination, we share the trial court's observation that Father's testimony was-at a minimum-disjointed and inconsistent.

[8] Dr. Rosdeutscher testified:

Q. Well, based on what you've observed of the child, as the treating physician are you able to attribute to anything or anyone how the child has fared since birth?
A. He has done very well due to the early intervention that he has gotten, the early speech therapy he has gotten, the early intervention through Tennessee Early Intervention, the therapy that he has gotten, and all of that has contributed to the fact that he has done so well. Being aggressive about being - - you know, getting follow-up, being aggressive about getting

(continued...)

bonded with Appellees and that it would "substantially harm his emotional development" to be separated from them. Appellees testified as to the efforts they made to include Father in Landon's activities and that Father's lack of participation and disinterest in Landon's health and well-being made termination of his parental rights in Landon's best interest. Taken as a whole, the evidence of Father's neglect and lack of attention to Landon's medical and other needs shows an unwillingness on his part to see that Landon's needs are met and puts Landon at risk for more medical problems and issues. This in turn supports a holding that a continuation of the relationship between Father and Landon would greatly diminish Landon's complete integration into the safe and stable environment available in the home of Appellees.

For the foregoing reasons, the evidence clearly and convincingly establishes the elements necessary to terminate Father's parental rights on the grounds of persistence of conditions. Although not raised by Father as an issue on appeal, we also conclude that the evidence clearly and convincingly shows that termination of Father's parental rights is in Landon's best interest.

Accordingly, we affirm the trial court's decision.

_____
RICHARD H. DINKINS, JUDGE

---

[8](...continued)
services for him. Sometimes insurance companies don't like to do things that we feel like they need to do, and the children need an advocate. So I think that the aggressiveness by which the Tennessee Early Intervention, the speech therapy, and all of the therapies and preschools and all of the things that he has, there is no doubt - - we know from evidence-based medicine that early intervention and therapy in these kids tends to benefit them in the long-run, period.

So I think anything that we have done and that his guardians have done to get him to speech therapy, to get him to all of therapies he's needed, to get him to all of the doctors' appointments he's needed, that has been very much contributed to how well he's done.
Q. The therapies he needs now and the speech therapy that you mentioned, does he need those things because of his condition at birth?
A. Yes. And we know that the babies who are born prematurely are more like to need long-term therapy.