# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
### Assigned on Briefs August 1, 2013

## IN RE: JOHNNY K. F.

**Appeal from the Chancery Court for Hamilton County**
**No. 11A003    W. Frank Brown, III, Chancellor**

---

### No. E2012-02700-COA-R3-PT-FILED-AUGUST 27, 2013

---

Grandparents Johnny F. and Sharon E. F. ("the Petitioners") filed a petition in the Chancery Court for Hamilton County ("the Trial Court") seeking to terminate the parental rights of Shawn L. F. ("Father") and Shauna L. F. ("Mother") to the minor child Johnny K. F. ("the Child"). After trial, the Trial Court entered an order finding and holding, *inter alia*, that clear and convincing evidence existed to terminate Father's and Mother's parental rights under Tenn. Code Ann. § 36-1-102 (1)(A)(iv) with respect to Father and Tenn. Code Ann. § 37-1-102 (b)(23) and Tenn. Code Ann. § 36-1-113 (g)(3) with respect to Mother, and that termination was in the best interests of the Child. Father and Mother appeal to this Court. We reverse, in part, and vacate, in part, the judgment of the Trial Court and remand for a new trial.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Reversed,**
**in Part, and, Vacated, in Part; Case Remanded**

D. MICHAEL SWINEY, J., delivered the opinion of the Court, in which THOMAS R. FRIERSON, II, J., joined. JOHN W. MCCLARTY, J., filed a dissenting opinion.

Jennifer G. Lloyd, Chattanooga, Tennessee, for the appellant, Shawn L. F.

Cara C. Welsh, Chattanooga, Tennessee, for the appellant, Shauna L. F.

Justin G. Woodward, Chattanooga, Tennessee, for the appellees, Johnny F. and Sharon E. F.

# OPINION

## Background

The Child was born on April 5, 2009. The Child shortly thereafter entered the custody of his maternal grandfather and maternal step-grandmother, the Petitioners. In January 2011, the Petitioners filed a petition to terminate the parental rights of Father and Mother to the Child. The petition alleged the following grounds:

11.

Respondents, [Father] and [Mother], have provided no financial support and have had no, or only token visitation with the Adoptive Child within the past four months.

12.

The failure of the Respondents, [Father] and [Mother], to have any significant relationship with the Adoptive Child, combined with their failure to provide any type of financial support for the child amounts to an abandonment of the Adoptive Child. Tennessee Code Annotated § 36-1-102, provides in pertinent part as follows:

(1)(A) Abandonment means, for purposes of terminating the parental or guardian rights of parent(s) or guardian(s) of a child to that child in order to make that child available for adoption, that:

(i) For a period of four (4) consecutive months immediately preceding the filing of a proceeding or pleading to terminate the parental rights of the parent(s) or guardian(s) of the child who is the subject of the petition for the termination of parental rights or adoption, that the parent(s) or guardian(s) either have willfully failed to visit or have willfully failed to support or have willfully failed to make reasonable payments toward the support of the child.

(C) For purposes of this subdivision (1), 'token visitation' means that the visitation, under the circumstances of the individual case, constitutes nothing more than perfunctory visitation or visitation of such an infrequent nature or of such short duration as to merely establish minimal or insubstantial contact with the child.

(D) For purposes of this subdivision (1), 'willfully failed to support' or 'willfully failed to make reasonable payments toward such child's support' means the willful failure, for a period of four (4) consecutive months, to provide monetary support or willful failure to provide more than token payments toward the support of the child;

(E) For purposes of this subdivision (1), 'willfully failed to visit' means the willful failure, for a period of four (4) consecutive months, to visit or engage in more than token visitation.

13.

By reason of Tennessee Code Annotated § 36-1-102 and the common law of Tennessee, the Respondents, [Father] and [Mother], have entirely abandoned the Adoptive Child. On these grounds and under this statute, [the Petitioners], seek the termination of the Respondents' parental rights. Petitioners are prepared to prove by clear and convincing evidence that the Respondents did indeed abandon the Adoptive Child.

14.

Pursuant to Tennessee Code Annotated § 36-1-113(g)(3), there are grounds to terminate the parental rights of the Respondents, [Father] and [Mother]. The Respondents lost custody of the Adoptive Child pursuant to an order of the Juvenile Court of Hamilton County, Tennessee, in April of 2009. The conditions or circumstances that led to the removal of the Adoptive Child from the custody of the Respondents continues to persist. Such conditions continue to pose a risk of harm to the Adoptive Child. Failure to effectuate the termination of the Respondents' parental rights and the adoption of the child will prevent the continued custodial permanency of the Adoptive Child.

15.

Pursuant to Tennessee Code Annotated § 36-1-113(g) (4), there are grounds for termination of parental rights of the Respondent, [Mother]. The respondent has committed severe child abuse. During the pregnancy of the Adoptive Child, the Respondent tested positive on multiple occasions for illegal substances, to include cocaine. Following the birth of the Adoptive Child, said child tested positive for illegal substances, to include cocaine.

This matter was tried on September 21and October 30-31 of 2012.

Father testified. As of trial, Father was serving a seven year sentence connected with a charge and conviction of robbery. Father had served two to three years of his sentence, and he testified that he is next eligible for parole in October 2013. Under a restraining order stemming from a domestic incident involving Mother, Father was not present at the Child's birth. The robbery for which Father went to prison occurred after the birth of the Child. In prison, Father, on the recommendation of "parole," took part in a program called a "therapeutic community" that helps people with drug abuse problems and reintegration into the community. Father acknowledged having had substance abuse issues. Father also admitted that he had a lengthy criminal history.

Father described his relationship with Mother and the Child. Father previously had lived with Mother. The pair were together for about a year. They had dated when they were younger as well. Father previously had a job as a roofer. According to Father, he tried to contact Johnny F. several times regarding the Child, but that Johnny F. proved difficult to contact. Father wrote a letter to the Petitioners concerning the Child. Father testified to his willingness to pay for the Child's support, even with his small jail stipend. Father also acknowledged never having paid any support for the Child.

Father's mother, Renee H., testified. Renee H. stated that Father had attempted to contact the Child through the Child's grandfather. Renee H. also stated that Father could live with her upon his release from prison.

Mother testified. Mother acknowledged she never paid any child support for the Child. Mother was arrested on October 4, 2012 for possession of a controlled substance. Mother stated that she did not leave the hospital with the Child because she tested positive for PCP. Mother stated that this result must have been inaccurate. Mother never had physical custody of the Child. According to Mother, she had been prescribed hydrocodone for pain stemming from a back injury. Mother took hydrocodone in the five to six year period leading up to the birth of the Child. Mother testified that she continues to struggle with drug addiction issues. Mother testified that at around the time of the Child's birth, she was taking Alazopram and hydrocodone, as well as anti-anxiety medication. A record was admitted showing negative tests on the Child for all tested substances except benzodiazepine. Another urine drug screen for Mother showed a positive result for cocaine as of March 27, 2009, before the Child's April 5, 2009 birth. Mother testified that since September 7, 2010, regarding her drug use, she is "taking it one day at a time. Not everybody is perfect. I'm not saying I haven't back slid before." Mother stated she took her prescribed medicine when she needed it. Mother went to jail on a probation violation from January 23, 2010 to October 13, 2010.

Mother testified to her efforts at stabilizing her life. Mother owns a trailer, and is working on a five-year lease to buy property. This arrangement existed since January of 2012. Mother cleans houses and also gardens for living. Mother had earned back her driver's license. Mother visited with the Child on weekends leading up to the filing of the petition. Mother testified that she has made efforts to combat her drug problems. Mother, however, acknowledged that should the Petitioners' adoption proceed against her wishes, the Child would be loved and cared for by the Petitioners.

The Petitioners testified. Sharon E. F., the Child's maternal step-grandmother and co-petitioner, testified. Sharon E. F, along with her husband, hoped to adopt the Child. Sharon E. F. testified to Mother's problems with drugs. Sharon E. F. testified that about

-4-

three months before the birth of the Child, Mother attempted suicide by ingesting a number of pills. These pills were not identified. Sharon E. F. stated "I had taken [Mother] to Pine Ridge to seek help for drug addiction and depression...we tried extensively to help her." After taking custody of the Child, Sharon E. F. testified to an incident where Mother came to her house and passed out with her face in her purse. Some synthetic urine was nearby. Sharon E. F. stated that Mother used drugs at the Child's birthday party in 2012. Sharon E. F. also testified that she saw Mother with "red eyes and slurred speech," while taking a white pill.

Sharon E. F. acknowledged a period of "drinking and drugging" in her early life, but that these issues were addressed by age 36. Sharon E. F. had been diagnosed with a number of psychological ailments, including bipolar disorder.

Johnny F., the Child's maternal grandfather and the other co-petitioner, testified as well. Johnny F. corroborated his wife's account of her turnaround in life. The Petitioners had certain financial difficulties, such as being behind on their mortgage payments. Johnny F. also acknowledged his own difficulties in previous years with mental health issues.

Kayla F., 18 at the time of trial and another of Mother's children, testified in rebuttal. The crux of Kayla F.'s testimony was that Mother's drug abuse persisted, and that Kayla F. had witnessed Mother in an intoxicated state two weeks after the September court date.

In November 2012, the Trial Court entered its Memorandum Opinion terminating the parental rights of Mother and Father to the Child. We reproduce the significant portions of that order:

> The court does not terminate either parent's rights due to failure to pay or provide support during the applicable four month period. [Father] was incarcerated and he could not provide support. [Mother] was just getting out of Silverdale Detention unit. It was not proved, by clear and convincing evidence that she began working after her release and therefore was able to pay support for [the Child].

> However, the court does terminate the parental rights of [Mother] on the basis of severe child abuse. The court finds that she did take illegal substances and abused prescription medications while [the Child] was in utero. She produced no prescriptions for the "legal" drugs that were shown to be within [her] and [the Child]. She admitted to using cocaine and other substances

while she was pregnant with [the Child].[1] She also tested positive for cocaine within a month of [the Child's] birth.

The conditions leading to [Mother's] losing custody of [the Child] continued for over 20 months after she lost custody as, in addition to her addiction problems, she did not have her own home, no separate transportation and no stable employment and these conditions persisted for such a long period of time to warrant termination of parental rights on this ground.

Further, [Father's] parental rights will be terminated on the ground of his continued illegal activity, after [the Child's] birth, by which he showed wanton disregard for [the Child's] welfare. Shortly after [the Child's] birth, [Father] returned to a life of crime. He was convicted of robbery and received five year sentence. This sentence was added to two years left on a criminal conviction before [the Child's] birth, making his effective sentence, as he testified, one of seven years.

\*\*\*

[Father] has not maintained visitation or other contact with [the Child] due to his incarceration, which occurred within months of [the Child's] birth. [Father] has never visited with [the Child]. [Mother] has had intermittent visits with [the Child]. A meaningful relationship does not presently exist between [Father] and [the Child]. It also appears clear that there is not at this time a close relationship between [the Child] and [Mother]. A change in the child's caretakers and physical environment would have a terrible effect on [the Child's] emotional and psychological condition. He has been with [the Petitioners] since he left the hospital after birth. He is not yet 3 years old. [The Child] is stable and his behavior and actions conform to expected social standards. [Mother] has failed to maintain consistent employment and has not supported [the Child]. [Mother] used illegal drugs and abused drugs while she was pregnant with [the Child]. She continued to use illegal drugs after his birth. The evidence convinces the court that she is still using illegal drugs and/or abusing "legal" drugs to such an extent that she is impaired. The termination of the parental rights of [Father] and [Mother] to [the Child], pursuant to the factors set forth in Tenn. Code Ann. § 36-1-113(i)(1)-(9), is in the child's best interest because:

---

[1]Earlier in its order, the Trial Court stated that Mother denied ever using cocaine.

-6-

(a) [The Child] has bonded with [the Petitioners]. They have established a meaningful parent-child relationship with [the Child] during the thirty-four months [the Child] has lived with them. [Father] nor [Mother] has a meaningful parent-child relationship with [the Child] at this time.

(b) [The Child] is part of a three-person family unit that includes married persons in the father and mother roles for [the Child];

(c) [The Petitioners'] home is safe, secure, stable and healthy;

(d) [The Child] has lived with [the Petitioners], who have been responsible for his education, medical and dental treatment, clothing, shelter and other necessities of life since he was released from the hospital and [Father] can afford to support [the Child] and provide the necessities of life for [the Child].

[Father] also seems to have problems with alcohol and criminal activity.

[Father] nor [Mother] has paid any support at all for [the Child] within the applicable four (4) month period or any other period. Instead, [the Petitioners] have met all of [the Child's] needs through their own funds. The adoption of [the Child] into a two-parent family, one in which [the Child] already perceives [Mr. F.] as his father figure and [Mrs. F.] as [his] mother figure, would be in the best interest of [the Child]. [The Child] is thriving in a safe, secure, structured, predictable environment where [his] emotional, physical and other needs are being met by [the Petitioners]. It is in the best interests of [the Child] that the parental rights of [Father] and [Mother] to [the Child] be terminated in order that the adoption of [the Child] by [the Petitioners] can occur. (Citations omitted and format modified)

Father and Mother filed appeals to this Court.

### Discussion

Though not stated exactly as such, Father raises three issues on appeal: 1) whether the Trial Court erred in finding and holding that clear and convincing evidence existed to terminate Father's parental rights pursuant to Tenn. Code Ann. § 36-1-102 (1)(A)(iv) when this ground was not alleged in the petition to terminate Father's parental rights to the Child; 2) whether the Trial Court erred in finding and holding that clear and

convincing evidence existed to terminate Father's parental rights pursuant to Tenn. Code Ann. § 36-1-102 (1)(A)(iv); and, 3) whether the Trial Court erred in finding by clear and convincing evidence that it was in the Child's best interest for Father's parental rights to be terminated. Though not stated exactly as such, Mother raises five issues on appeal: 1) whether the Trial Court erred in permitting and relying on the testimony of a non-sequestered witness; 2) whether the Trial Court erred by violating its own protective order in admitting certain medical evidence; 3) whether the Trial Court erred in finding and holding that clear and convincing evidenced existed to terminate Mother's parental rights pursuant to Tenn. Code Ann. § 37-1-102 (b)(23); 4) whether the Trial Court erred in finding and holding that clear and convincing evidence existed to terminate Mother's parental rights pursuant to Tenn. Code Ann. § 36-1-113 (g)(3); and, 5) whether the Trial Court erred in finding by clear and convincing evidence that it was in the Child's best interest for Mother's parental rights to be terminated. The Petitioners raise no unique issues of their own on appeal.

Our Supreme Court reiterated the standard of review for cases involving termination of parental rights stating:

> This Court must review findings of fact made by the trial court *de novo* upon the record "accompanied by a presumption of the correctness of the finding, unless the preponderance of the evidence is otherwise." Tenn. R. App. P. 13(d). To terminate parental rights, a trial court must determine by clear and convincing evidence not only the existence of at least one of the statutory grounds for termination but also that termination is in the child's best interest. *In re Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002) (citing Tenn. Code Ann. § 36-1-113(c)). Upon reviewing a termination of parental rights, this Court's duty, then, is to determine whether the trial court's findings, made under a clear and convincing standard, are supported by a preponderance of the evidence.

*In re F.R.R., III*, 193 S.W.3d 528, 530 (Tenn. 2006).

In *Department of Children's Services v. D.G.S.L.*, this Court discussed the relevant burden of proof in cases involving termination of parental rights stating:

> It is well established that "parents have a fundamental right to the care, custody, and control of their children." *In re Drinnon*, 776 S.W.2d 96, 97 (Tenn. Ct. App. 1988) (citing *Stanley v. Illinois*, 405 U.S. 645, 92 S. Ct. 1208, 31 L. Ed. 2d 551 (1972)). "However, this right is not absolute and parental rights may be terminated if there is clear and convincing evidence justifying

such termination under the applicable statute." *Id.* (citing *Santosky v. Kramer*, 455 U.S. 745, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982)).

Termination of parental or guardianship rights must be based upon a finding by the court that: (1) the grounds for termination of parental or guardianship rights have been established by clear and convincing evidence; and (2) termination of the parent's or guardian's rights is in the best interests of the child. Tenn. Code Ann. § 36-1-113(c). Before a parent's rights can be terminated, it must be shown that the parent is unfit or substantial harm to the child will result if parental rights are not terminated. *In re Swanson*, 2 S.W.3d 180, 188 (Tenn. 1999); *In re M.W.A., Jr.*, 980 S.W.2d 620, 622 (Tenn. Ct. App. 1998). Similarly, before the court may inquire as to whether termination of parental rights is in the best interests of the child, the court must first determine that the grounds for termination have been established by clear and convincing evidence. Tenn. Code Ann. § 36-1-113(c).

*Dep't of Children's Servs. v. D.G.S.L.*, No. E2001-00742-COA-R3-JV, 2001 Tenn. App. LEXIS 941, at **16-17 (Tenn. Ct. App. Dec. 28, 2001), *no appl. perm. appeal filed.* Clear and convincing evidence supporting any single ground will justify a termination order. *E.g., In re Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002).

We first address whether the Trial Court erred in finding and holding that clear and convincing evidence existed to terminate Father's parental rights pursuant to Tenn. Code Ann. § 36-1-102 (1)(A)(iv) (abandonment by wanton disregard) when this ground was not alleged in the petition to terminate Father's parental rights to the Child. The statute provides:

(1)(A) For purposes of terminating the parental or guardian rights of parent(s) or guardian(s) of a child to that child in order to make that child available for adoption, "abandonment" means that:

***

(iv) A parent or guardian is incarcerated at the time of the institution of an action or proceeding to declare a child to be an abandoned child, or the parent or guardian has been incarcerated during all or part of the four (4) months immediately preceding the institution of such action or proceeding, and either has willfully failed to visit or has willfully failed to support or has willfully failed to make reasonable payments toward the support of the child for four (4) consecutive months immediately preceding such parent's or guardian's

incarceration, or the parent or guardian has engaged in conduct prior to incarceration that exhibits a wanton disregard for the welfare of the child;

Tenn. Code Ann. § 36-1-102(1)(A)(iv) (2010).

Father argues in his brief that, "[a]s [Father] had no notice of this particular ground, he was prejudiced and not prepared to defend against the allegation." For their part, the Petitioners argue in their brief that, "while the specific issue as to [Father's] abandonment of the child prior to his incarceration was not specifically pled it was tried by implied consent of the parties."

As we have stated regarding procedure in these matters:

[C]ourts must "strictly apply the procedural requirements in cases involving the termination of parental rights." *Weidman v. Chambers*, No. M2007–02106–COA–R3–PT, 2008 WL 2331037, at *6 (Tenn. Ct. App. June 3, 2008) (citing *In re W.B. IV.*, No. M2004–00999–COA–R3–PT, 2005 WL 1021618, at *10 (Tenn. Ct. App. Apr. 29, 2005); *In re M.J.B.*, 140 S.W.3d 643, 651 (Tenn. Ct. App. 2004)). Providing notice of the issues to be tried is considered a fundamental component of due process. *In re W.B. IV.*, 2005 WL 1021618, at * 13 (citations omitted). The pleadings limit the ruling to the grounds of termination alleged, "because to find otherwise would place the parent at a disadvantage in preparing a defense." *See id*. at *10 (reversing a trial court's order terminating parental rights on grounds not alleged in the complaint); *see also In re M.J.B.*, 140 S.W.3d at 651 (holding that courts must take a very strict view of procedural omissions that could put a parent at a disadvantage in preparing for trial). Thus, a trial court cannot terminate parental rights based on a ground that is not alleged in the complaint. *In re Tristyn K.*, No. E2010–00109–COA–R3–PT, 2010 WL 2867179, at *5 (Tenn. Ct. App. July 22, 2010) (citations omitted).

*In re: Landon H.*, No. M2011-00737-COA-R3-PT, 2012 WL 113659, at *4 (Tenn. Ct. App. Jan. 11, 2012), *no appl. perm. appeal filed.*

Having reviewed the allegations in the petition to terminate parental rights, we agree with Father that he was not put on sufficient notice that his parental rights could be terminated on the ground of abandonment by wanton disregard. The petition, while referencing the pertinent statute, failed to identify the specific ground of abandonment by wanton disregard. Abandonment by wanton disregard is a distinct ground for termination of parental rights. Moreover, abandonment by wanton disregard is a ground where the

relevant conduct is not confined to the four months leading up to a parent's incarceration. *In re: Audrey S.*, 182 S.W.3d 838, 871 (Tenn. Ct. App. 2005). We find that Father lacked adequate notice from the petition that his earlier, wider conduct could serve as a basis for terminating his parental rights.

Nevertheless, a ground for termination not included in the petition can be properly found if the ground were tried by implied consent. *In re: Anthony R.*, No. M2012-01412-COA-R3-PT, 2013 WL 500829, at *4 n. 5 (Tenn. Ct. App. Feb. 8, 2013), *no appl. perm. appeal filed*. However, the record before us does not support a finding that abandonment by wanton disregard was tried by implied consent. The strict application of procedural requirements in cases involving the termination of parental rights requires that before there can be a finding that a ground for termination not alleged in the petition was tried by implied consent, the record must be clear that such ground indeed was tried by implied consent. To make such a finding, it must be clear from the record that the evidence presented that is relevant to the unpled ground had no relevance to any other issue being presented to the Trial Court. *See In re: S.J.M.*, No. M2009-01080-COA-R3-PT, 2009 WL 4039430, at *3 (Tenn. Ct. App. Nov. 20, 2009), *no appl. perm. appeal filed*. It must be clear from the record that the parent fully understood that this particular unpled ground for termination was being tried and that the parent impliedly consented to the trial of that ground even though it had not been pled. We are not convinced from the record before us that Father impliedly consented to the ground of abandonment by wanton disregard being tried.

We vacate the Trial Court's judgment against Father with respect to the ground of abandonment by wanton disregard, and remand for proceedings consistent with this Opinion, including an amendment of the petition, if requested, to allege abandonment by wanton disregard and a new trial as to Father. Because we vacate the only ground for termination of Father's parental rights found by the Trial Court, Father's remaining issues are pretermitted.

We now turn to Mother's issues and first address whether the Trial Court erred in permitting and relying upon the testimony of a non-sequestered witness. Kayla F., Mother's eldest daughter, testified as a rebuttal witness. Kayla. F. corroborated Sharon E. F.'s testimony concerning Mother's continued drug use. Mother argues that Kayla F.'s and Sharon E. F.'s testimony had noticeable parallels and Kayla F.'s testimony appears to be a verification of Sharon E. F.'s earlier testimony. The record shows that Kayla F. had remained in the courtroom during Sharon E. F.'s earlier testimony, despite invocation of Rule 615 of the Tennessee Rules of Evidence. When Kayla F. was called to testify, the following exchange occurred:

MR. WRIGHT: Now, were you here on September the 21st?

KAYLA F.: I was.
MR. WRIGHT: Were you in the courtroom?
KAYLA F.: For a part of it.
MR. WRIGHT: What part were you in the courtroom?
KAYLA F.: After the phone hung up with Shawn, that's the last I heard, right as they dismissed the case and told us to come back.

\*\*\*

THE TRIAL COURT: Are you planning to ask her about anything that occurred that first morning?
MR. WRIGHT: No, Your Honor. The only thing I'm going to ask her is in rebuttal to what [Mother] said this morning.
THE TRIAL COURT: Okay. You may ask her.

The record shows that Kayla F. was in the courtroom during Sharon E. F.'s testimony on the first day of trial. Rule 615 clearly had been invoked. This presents a problem as Rule 615 exists for a reason. As our Supreme Court has explained: "The purpose of the rule [of sequestration] is to prevent one witness from hearing the testimony of another and adjusting his testimony accordingly." *State v. Harris*, 839 S.W.2d 54, 68 (Tenn. 1992). Mother's drug use was a central aspect of this case in which her parental rights were challenged. Both Sharon E. F. and Kayla F. testified, in part at least, about Mother's issues with drugs. The appearance of verification of Sharon E. F.'s testimony by Kayla F. is significant and cannot be ignored. Rule 615 of the Tennessee Rules of Evidence applies to rebuttal witnesses such as Kayla F. While we understand the Petitioners' attorney's response to the Trial Court's question as to whether the attorney intended to ask Kayla F. about anything that occurred that first morning of trial when she was in the courtroom and the attorney answered "No," the record shows that, while Kayla F.'s testimony may well have been offered as rebuttal to what Mother had testified to, Kayla F.'s testimony also clearly corroborated Sharon E. F.'s testimony given while Kayla F. was in the courtroom. None of the exceptions contained in Rule 615 are applicable here. Rule 615 does not set out precisely what is to happen upon a violation of the rule. Regarding violations of the rule: "When a sequestration rule violation is raised on appeal, the court shall consider the seriousness of the violation and the prejudice, if any, suffered by the defendant." *State v. Reid*, No. M2001-02753-CCA-R3-DD, 2003 WL 23021393, at \*45 (Tenn. Crim. App. Dec. 29, 2003), *aff'd by State v. Reid*, 164 S.W.3d 286 (Tenn. 2005).[2] We hold that it was error for the Trial Court

---

[2]While this citation comes from a criminal case, we believe the principle is sound generally as to the rule. Also, while not criminal matters themselves, cases involving the termination of parental rights affect
(continued...)

to permit Kayla F. to testify, even as a rebuttal witness, when she was present in the courtroom on the first day of trial and heard Sharon E. F.'s testimony which then was corroborated, at least to some extent, by Kayla F.'s testimony.

We next address whether the Trial Court erred in admitting certain medical evidence which Mother argues was contrary to the Trial Court's own protective order. Mother filed an order to quash early in the proceedings regarding a subpoena for her medical records. On September 21, 2012, the first day of trial, the Trial Court made remarks regarding which medical records would be allowed:

> The Court will limit the use of the medical records of [Mother] to the allegations which were in the petition that she had committed severe child abuse by using drugs while she was pregnant and that the child had tested positive for cocaine and perhaps other drugs at birth and perhaps during the pregnancy.
>
> No other records or medical records of [Mother] will be allowed from this subpoena except those. So we will, in effect, go through the records. And the records that don't relate to drug use or drug pregnancy or drug use at the time of birth of the child's condition at the time of birth will be returned to counsel for [Mother].

On October 30, 2012, the Trial Court entered an order limiting the admissibility of the medical records. In this written order, the Trial Court outlined a more restrictive approach to admitting medical records than its earlier remarks from the bench indicated, apparently limiting the records to be admitted to those related to the time of delivery of the Child. The order states in relevant part:

> [T]he Petitioners, through their Counsel only, shall be allowed to view only those portions of the subject medical records reporting the results of any drug screening for the presence of illegal drugs in the Respondent, [Mother], at the time of delivery of the infant, [the Child], and the presence of illegal drugs in the infant, [the Child], at the time of birth only.

According to Mother, "[t]he Trial Court's inconsistency on this issue from the beginning to the end creates an impossible moving target to defend, and absent consistent procedural standards, the termination should be dismissed."

---

[2](...continued)
an individual's rights in a manner comparable in some respects to criminal cases.

Severe child abuse is a ground for the termination of parental rights:

(g) Initiation of termination of parental or guardianship rights may be based upon any of the grounds listed in this subsection (g). The following grounds are cumulative and non-exclusive, so that listing conditions, acts or omissions in one ground does not prevent them from coming within another ground:

***

(4) The parent or guardian has been found to have committed severe child abuse as defined in § 37-1-102, under any prior order of a court or is found by the court hearing the petition to terminate parental rights or the petition for adoption to have committed severe child abuse against the child who is the subject of the petition or against any sibling or half-sibling of such child, or any other child residing temporarily or permanently in the home of such parent or guardian;

Tenn. Code Ann. § 36-1-113 (g)(4) (Supp. 2012).

"Severe child abuse" is defined as follows:

(A)(i) The knowing exposure of a child to or the knowing failure to protect a child from abuse or neglect that is likely to cause serious bodily injury or death and the knowing use of force on a child that is likely to cause serious bodily injury or death;

Tenn. Code Ann. § 37-1-102 (b)(23)(A)(i) (Supp. 2012).

The Trial Court found, *inter alia*, as follows:

(d) There is a record on [Mother] that she tested positive for cocaine and Benzodiazepine. The test was conducted on March 12, 2009, less than a month before [the Child's] birth.
(e) There was another specimen given on March 27, 2009. She was positive for Benzodiazepines and opiates. This test was within ten days of [the Child's] birth.

The records pertaining to Mother's drug use during pregnancy certainly are relevant to the ground of severe child abuse as alleged in the petition. However, there is a basis for the confusion as claimed by Mother as to what the Trial Court intended to allow in

-14-

the record at trial. The Trial Court's October 30, 2012 protective order was much narrower than its September 21, 2012 remarks reflect. On the other hand, the disputed medical records from Erlanger Hospital, the subject of the motion to squash, are not the only evidence in the record reflecting Mother's drug use during pregnancy. The Trial Court's findings also could be supported by medical records contained in the juvenile file, another exhibit.

Nevertheless, we find that there was sufficient discrepancy and uncertainty at trial so as to undermine the inclusion of certain of the medical records. While evidence of Mother's drug use both during pregnancy and after the delivery of the Child were relevant to the grounds for termination as alleged in the petition, Mother makes a legitimate argument that given the Trial Court's apparently inconsistent rulings as to what medical records would be allowed as evidence, Mother, indeed, was faced with a moving target as to this evidence. We are not, however, holding that Mother's medical records relating to her illicit drug use are not relevant and should have been excluded by the Trial Court. To the contrary, this evidence clearly is relevant to the grounds alleged in the petition. The basis for our finding error by the Trial Court as to this issue rests solely on the apparent confusion during trial concerning which medical records would be allowed by the Trial Court.

Between the non-sequestered witness and the inconsistency during trial concerning which medical records would be admissible, there were significant errors in Mother's trial. Cases involving termination of parental rights involve deeply-rooted fundamental rights, and compliance with the applicable statutes, rules, and case law is especially critical. We vacate the judgment of the Trial Court as it pertains to the finding by clear and convincing evidence that the ground of severe child abuse existed to terminate Mother's parental rights.

We next address whether the Trial Court erred in finding and holding that clear and convincing evidence existed to terminate Mother's parental rights pursuant to Tenn. Code Ann. § 36-1-113 (g)(3). As pertinent to this issue, Tenn. Code Ann. § 36-1-113(g)(3) provides:

> (3) The child has been removed from the home of the parent or guardian by order of a court for a period of six (6) months and:
>
> (A) The conditions that led to the child's removal or other conditions that in all reasonable probability would cause the child to be subjected to further abuse or neglect and that, therefore, prevent the child's safe return to the care of the parent(s) or guardian(s), still persist;

(B) There is little likelihood that these conditions will be remedied at an early date so that the child can be safely returned to the parent(s) or guardian(s) in the near future; and

(C) The continuation of the parent or guardian and child relationship greatly diminishes the child's chances of early integration into a safe, stable and permanent home;

Tenn. Code Ann. § 36-1-113(g)(3) (Supp. 2012).

Mother argues in her brief that "[a]lthough it is difficult to determine exactly which factors contributed to the original removal, it was apparent at the time of the trial that most if not all of the issues had been resolved, effectively eliminating this as a ground for termination."[3] Indeed, there is evidence in the record that Mother had been taking remedial steps in her life by the time of trial, including obtaining a residence, getting her driver's license back, and holding down employment. While we are concerned that Mother's drug habit has not entirely abated, the evidence in the record on this ground does not rise to clear and convincing. It is telling that the Petitioners in their brief do not argue that the termination of Mother's parental rights pursuant to Tenn. Code Ann. § 36-1-113(g)(3) was found correctly by the Trial Court. We reverse the Trial Court as to this issue.

The judgment of the Trial Court is vacated as it relates to the ground of abandonment by wanton disregard as a ground for terminating Father's parental rights. Additionally, the judgment of the Trial Court is vacated with respect to the ground of severe child abuse for terminating Mother's parental rights. Regarding the ground of persistent conditions in Mother's case, we reverse the Trial Court. We remand this case to the Trial Court for a new trial for both Mother and Father.

### Conclusion

The judgment of the Trial Court is reversed, in part, and vacated, in part, and this cause is remanded to the Trial Court for further proceedings, including a new trial, consistent with this Opinion. The costs on appeal are assessed against the Appellees, Johnny F. and Sharon E. F.

_____
D. MICHAEL SWINEY, JUDGE

---

[3]The Petitioners make no argument in favor of this ground of termination in their brief.